UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN RAYMOND LYONS,           )
                                )
              Petitioner,       )     Case No. 1:03-cv-328
                                )
v.                              )     Honorable David W. McKeague
                                )
DAVID JAMROG,                   )
                                )     **REPORT AND RECOMMENDATION**
              Respondent.       )
_____)

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a term of 14 to 25 years, imposed by the Calhoun County Circuit Court on September 18, 2000, after he pleaded *nolo contendere* to assault with intent to commit murder, MICH. COMP. LAWS § 750.83. In his *pro se* petition, Petitioner raises six grounds for relief, as follows: (1)-(2) Petitioner's rights to due process and trial by jury were violated when the trial court denied his motion to withdraw his guilty plea after evidence was discovered that proved Petitioner was actually innocent of the charges against him; (3) Petitioner was denied the effective assistance of counsel when his appointed counsel failed to adequately investigate the case and the court denied Petitioner's motion for substitute counsel, thus placing Petitioner in the position of going to trial unprepared or accepting the plea bargain; (4) Petitioner's plea was not knowing and voluntary because he was taking 900 milligrams per day of Thorazine and Lithium at the time of his plea, which rendered him unable to fully understand what was happening; (5) trial counsel was ineffective when she repeatedly advised Petitioner that he would be sentenced to imprisonment of four years

if he pleaded guilty to the offense; and (6) appellate counsel was ineffective when he failed to seek leave to appeal in the Michigan Supreme Court following the denial of Petitioner's application by the Michigan Court of Appeals in 2001.

Respondent has filed an answer to the petition (docket #8) stating that the petition should be denied. Upon review and applying the AEDPA standards, I find that all of Petitioner's claims are procedurally defaulted. Accordingly, I recommend that the petition be denied.

## Procedural History

### A. Trial Court Proceedings

Petitioner was charged with assault with intent to murder and possession of a firearm during the commission of a felony, arising from a drive-by shooting on Logan Street in Battle Creek on September 1, 1999. A preliminary examination was held on October 14, 1999. Kelly Wilemon testified that he was standing in his driveway talking to two friends in a car when a Camero and a Lincoln Marquis sped by. (PE Tr, 6.) When the Camero was only ten to fifteen feet from Wilemon, the front seat passenger leaned out of the window and fired nine shots over the roof of the car. (PE Tr, 7-8.) Wilemon testified that the gun was pointed toward him when the shots were fired. (PE, 7.) Wilemon could not see the shooter's face because the car was going too fast. (PE Tr, 13.) Wilemon's girlfriend, Christine Van Bruggen, was in the Lincoln. She called Wilemon later that day and told him that Petitioner did the shooting. (PE Tr, 16.) Wilemon did not know Petitioner prior to the incident. (PE Tr, 10.)

Shirley Mae Smith, Wilemon's mother, was also standing outside when the shooting occurred. (PE Tr, 18.) Mrs. Smith testified that she saw the shooter's face and recognized him as

Steven Lyons. (PE Tr, 19.) She recognized Petitioner because they used to work at the same place. (PE Tr, 19.)

Christine Van Brugge testified that she was with Petitioner and David Crail on the day of the shooting. (PE Tr, 26.) Van Brugge and Wilemon had broken up the night before and had several arguments that day over the phone. (Pe Tr, 27.) During one such argument, Van Brugge handed the phone to Petitioner. (PE Tr, 27.) Van Brugge heard Petitioner make threats to beat and kill Wilemon. (PE Tr, 28.) While they were parked at some pay phones before the shooting, Crail left to go get something. (PE Tr, 31.) When he returned, he wrapped something up in a shirt and handed it through the passenger-side window to Petitioner. (PE Tr, 33.) Van Brugge did not actually see a gun. (Pe Tr, 33.) She thought they were going over to Wilemon's house to get her belongings. (PE Tr, 31.) The district court found the evidence sufficient to bind Petitioner over on the charges.

On August, 2000, the day Petitioner was scheduled to go to trial, he informed the Court that he had changed his mind about pleading guilty and wanted to retain a new lawyer for purposes of going to trial. (Plea Tr, 4.) The Court advised Petitioner that he had a right to go to trial if he so chose, but it was too late for him to hire a new lawyer. Accordingly, Petitioner was given the option of pleading guilty or immediately going to trial with his appointed counsel. (Plea Tr, 4-5.) After consulting with his father and defense counsel off the record, Petitioner decided to plead no contest to the charge of assault with intent to murder. Under the plea agreement, the felony-firearm charge was dismissed and the minimum sentence on the charge of assault with intent to murder could not exceed 14 years. (Plea Tr, 15.)

Petitioner retained new counsel, David E. Gilbert, who filed a motion on Petitioner's behalf to withdraw the plea. Petitioner maintained that he was innocent of assault with intent to commit murder because he did not intend to kill Wilemon. Petitioner stated, "Defendant has consistently stated that he had been in possession of a handgun in the car during this incident and discharged it over the heads of those he is accused of intending to kill, claiming that he did not intend to kill, but to make people duck." Following a hearing on September 18, 2000, the trial court denied his motion. (Motion to Withdraw Plea Transcript, docket #24.) Later that day, Petitioner was sentenced to serve a term of 14 to 25 years. (Sentencing Transcript, 17, docket #14.) Petitioner filed an amended motion to withdraw plea on October 3, 2000. He continued to maintain that he was actually innocent of the charge. In his supporting affidavit, Petitioner averred that he "commit[ed] a felonious assault against the victims by firing a handgun out of a car intentionally over their heads into a tree to scare them." Following a hearing held on October 30, 2000, the trial court denied his motion. (Amended Motion to Withdraw Plea Transcript, docket #27).

### B. Direct Appeal

Appointed counsel Paul G. Staten represented Petitioner on appeal. Counsel filed an application for leave to appeal in the Michigan Court of Appeals on September 14, 2001, raising the following issues:

I. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS PLEA PRIOR TO SENTENCING WHERE DEFENDANT HAD FAIR AND JUST REASONS TO SUPPORT PLEA WITHDRAWAL AND THE PROSECUTOR DID NOT DEMONSTRATE SUBSTANTIAL PREJUDICE IN RELIANCE ON THE PLEA.

II. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED REVERSIBLY IN REFUSING DEFENDANT'S REQUEST TO RETAIN NEW COUNSEL.

(*See* Def.-Appellant's Br. on Appeal, docket #15.)  On October 26, 2001, the Michigan Court of Appeals denied Petitioner's application "for lack of merit in the grounds presented." (*See* 10/26/01 Mich. Ct. App. Ord., docket #15.)  Petitioner failed to pursue an appeal in the Michigan Supreme Court.

### C.  Post-Conviction Relief

Petitioner again retained the service of David E. Gilbert, who filed a motion for relief from judgment in the Calhoun County Circuit Court on June 26, 2002.  The motion was denied on July 18, 2002.  The circuit court denied the motion pursuant to M.C.R. 5.508(D) because Petitioner failed to establish good cause for failing to raise his claims on direct appeal.  The court further concluded that Petitioner had failed to show actual prejudice "where there is a complete lack of evidence that his plea was involuntary."  The circuit court subsequently denied Petitioner's motion for reconsideration.

Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and the Michigan Supreme Court raising the following two claims:

I.   THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT UNDER MCR 6.508(D) BY RULING IT WAS PRECLUDED FROM GRANTING RELIEF ON THE GROUNDS THAT THE GROUNDS FOR RELIEF WERE PREVIOUSLY DECIDED BY THE COURT OF APPEALS IN ITS DENIAL OF DEFENDANT'S APPLICATION FOR LEAVE TO APPEAL, AS THE DENIAL FOR LEAVE TO APPEAL WAS NOT AN AFFIRMANCE ON THE MERITS OF THE CASE AND THEREFORE NOT A DECISION.

II.  THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT RELIEF UNDER MCR 6.508 IN FINDING DEFENDANT DID NOT MEET HIS BURDEN FOR ENTITLEMENT TO RELIEF BY FAILING TO ESTABLISH GOOD CAUSE FOR NOT RAISING CERTAIN GROUNDS ON APPEAL AND FAILURE TO SHOW ACTUAL PREJUDICE WHERE DEFENDANT SHOWED:

> (A) FAIR AND JUST REASONS FOR WITHDRAWING HIS NO CONTEST PLEA PRIOR TO SENTENCING INCLUDING ACTUAL INNOCENCE ON THE PART OF THE DEFENDANT OF THE CRIME OF ASSAULT WITH INTENT TO KILL;
>
> (B) THE TRIAL COURT REFUSED DEFENDANT'S REQUEST TO RETAIN NEW COUNSEL IN VIOLATION OF DEFENDANT'S 6TH AMENDMENT RIGHT TO COUNSEL; AND
>
> (C) INEFFECTIVE ASSISTANCE OF COUNSEL ON THE PART OF TRIAL COUNSEL WHO FAILED TO INVESTIGATE AND DEFEND THE CASE ON APPEAL AND APPELLATE COUNSEL THAT FAILED OR REFUSED TO REQUEST LEAVE TO APPEAL FROM THE MICHIGAN SUPREME COURT OR WHERE THE TRIAL COURT REFUSED TO WAIVE THE "GOOD CAUSE" REQUIREMENT BY FAILING TO CONCLUDE, BASED ON THE EVIDENCE BEFORE IT, THAT THERE WAS A SIGNIFICANT POSSIBILITY THE DEFENDANT WAS INNOCENT.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal on October 30, 2002, "for lack of merit in the grounds presented." (*See* Mich. Ct. App. Ord., docket #16.) The Michigan Supreme Court subsequently denied Petitioner's applications for leave to appeal on April 29, 2003, "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (*See* Mich. Ord., docket #17.)

### Standard of Review

The instant petition is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 ("AEDPA"). *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on

the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the fact of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429

(6th Cir.), *cert. denied*, 124 S. Ct. 535 (2003). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## **Discussion**

Petitioner's grounds for habeas corpus relief are procedurally defaulted. When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and

(3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* __ F.3d __, No. 03-1124, slip op. at 21 (6th Cir. July 29, 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001), *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim "will result in a fundamental miscarriage of justice." *Hicks*, No. 03-1124, slip op. at 22 (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *see also Murray v. Carrier*, 477 U.S. 478, 495 (1986) (specifying that a 'fundamental miscarriage of justice' will result "where a constitutional violation has probably resulted in the conviction of one who was actually innocent.")

With the exception of Petitioner's fourth ground for habeas corpus relief, Petitioner's federal claims were presented before the state courts in his motion for relief from judgment. The Michigan Supreme Court expressly denied Petitioner's application for leave to appeal on the basis that Petitioner failed to "meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." (4/29/03 Mich. Ord., docket #17.) Under M.C.R. 6.508(D)(2) and (3), a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised on direct appeal. For claims that could have been raised, the defendant is entitled to relief only if he can establish "good cause" for failing to raise the grounds on appeal and "actual prejudice," as shown by a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

A state law procedural rule is adequate and independent when it was "firmly established" and "regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). In assessing how firmly a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *See Luberda v. Trippett*, 211 F.3d 1004, 1006-1007 (6th Cir. 2000). Because M.C.R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place some time thereafter, M.C.R. 6.508(D) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda*, 211 F.3d at 1007; *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998). The Sixth Circuit squarely has held that where the Michigan Supreme Court denies leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," the court has provided sufficient explanation that the decision was based on procedural default. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 387-88 (6th Cir. 2004); *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2002); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Therefore, all of the claims raised in Petitioner's motion for relief from judgment are procedurally defaulted.[1]

---

[1] Some of Petitioner's grounds for habeas relief were first presented in his direct appeal to the Michigan Court of Appeals. Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). Because Petitioner failed to file an application for leave to appeal in the Michigan Supreme Court, he failed to satisfy the exhaustion requirement. Petitioner subsequently filed a motion for relief from judgment pursuant to M.C.R. 6.500 *et seq.*, in which he reasserted the claims set forth in his direct appeal, as well as some new claims. As set forth above, the claims set forth in Petitioner's motion for relief from judgment are procedurally defaulted.

Petitioner's fourth ground for habeas corpus relief, that his plea was involuntary because he was taking Thorazine and Lithium at the time of his plea, was never presented in the state courts.[2] If claims presented in the federal court were never actually presented in the state courts, but a state procedural rule now prohibits the state court from considering them, the claims are considered exhausted, but are procedurally barred. *Cone v. Bell*, 243 F.3d 961, 966 (6th Cir. 2001) (citing *Coleman*, 501 U.S. at 752-53), *rev'd on other grounds*, 535 U.S. 635 (2002). The exclusive remedy for post-conviction review in Michigan is a motion for relief from judgment. Under Michigan law, one such motion may be filed after August 1, 1995. M.C.R. 6.502(G)(1). Because Petitioner has already filed his one allotted motion, he has no available remedy in the state court by which to assert his claim. Accordingly, Petitioner's fourth ground for habeas corpus relief is also procedurally defaulted.

As previously noted, when a petitioner has procedurally defaulted in the state courts, he can only obtain federal habeas review of the claim if he demonstrates either: (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim "will result in a fundamental miscarriage of justice." *Hicks*, No. 03-1124, slip op. at 22. With regard to the grounds raised for the first time in his motion for relief from judgment, Petitioner asserts ineffective assistance of appellate counsel for failing to file an application for leave to appeal in the Michigan Supreme Court after the Michigan Court of Appeals denied his application for leave to appeal on direct review. To serve as cause to excuse the default, a claim of ineffective assistance of counsel

---

[2] Plaintiff fails to provide an affidavit or any other evidence concerning the medications he was taking at the time of his plea or how the medications affected his ability to understand the nature of the charge or the direct consequences of his guilty plea.

must be properly exhausted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001); *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001). Petitioner raised his claim of ineffective assistance of counsel in his motion for relief from judgment and in all levels of appellate review; thus, the claim was exhausted. However, because the claim was rejected by the Michigan Supreme Court's application of M.C.R. 6.508(D), the claim is also procedurally defaulted. Furthermore, in order to show ineffective assistance of counsel, it is first necessary to establish that Petitioner had a constitutional right to counsel at the procedural stage at which the alleged attorney error occurred. *Coleman*, 501 U.S. at 752. Petitioner did not have a constitutional right to counsel in his discretionary appeal before the state supreme court. *See Ross v. Moffit*, 417 U.S. 600 (1974). Accordingly, Petitioner cannot establish cause for his default. Moreover, Petitioner has not attempted to explain his failure to raise his fourth ground for habeas relief in his direct appeal or in his motion for relief from judgment. Therefore, Petitioner also fails to demonstrate cause with regard to his fourth ground for habeas relief.

Where a petitioner fails to show cause, the Court need not consider whether he has established prejudice. *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Even if Petitioner could show cause, he cannot establish prejudice because the record supports the trial court's finding that his plea was knowing and voluntary. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Moreover, a state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989). The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary

fashion under the standards first set forth by the Supreme Court in *Boykin v. Alabama*, 395 U.S. 238 (1969). The propriety of a guilty plea is assessed by reviewing the totality of the circumstances surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748-49 (1970). A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *See Brady*, 397 U.S. at 748. In general, a defendant is aware of the direct consequences of the plea if he or she is aware of the maximum and minimum (if any) sentence that may be imposed. *See King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991).

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see Parke v. Raley*, 506 U.S. 20, 29-30 (1992).

At the plea hearing, the trial court explained the rights Petitioner would waive by pleading guilty, including the right to trial. (Plea Tr. 11-13.) Petitioner acknowledged the waiver of each of those rights. (Plea Tr. 11-13.) The parties stipulated to the facts set forth in the preliminary examination testimony for purposes of a factual basis. (Plea Tr, 21.) In addition, Petitioner's counsel offered the following stipulated facts:

> We'll stipulate this occurred in the City of Battle Creek, Calhoun County, State of Michigan on or about September 1st of 1999 and my client was with two other young men and met some other young people, one of whom was Christy Van

>   Brugge who had just broke up with her boyfriend Kelly Wilemon and they talked and apparently there was a problem between the young woman Christy and her ex-boyfriend. She accused him I think of assaulting her. My client got very upset by that.
>
>   There was a phone call made to Kelly Wilemon during which my client is said to have made some threats to him including the threat to kill him if he ever got ahold of him, and then my client was a passenger in a automobile driven by a person named Carlos - - I believe Carlos Porter, and they drove by Kelly Wilemon's home while Kelly Wilemon was out in front of his driveway in front of the home located on Logan Street here in Battle Creek, 94 Logan Street.
>
>   Witnesses testified at the exam that they saw my client put his hand out the passenger side of the car and fire over the roof of the car at Kelly Wilemon. Kelly Wilemon I believe testified that he felt bullets go by his head I believe or in his direction and in fact casings were found in front of the driveway at 94 Logan Street.

(Plea Tr, 23.) Defense counsel explained that under the plea agreement, the felony-firearm charge was dismissed and the minimum sentence on the charge of assault with intent to kill could not exceed 14 years. (Plea Tr, 15.) The following exchange took place concerning Petitioner's minimum sentence:

>   Petitioner:   If I get 14 years in prison, with a cap, will I be able to – if I mind – you know, mind my P's and Q's and stay out of trouble, will I be able to get out of there within four – within a four-year period?
>
>   \*\*\*
>
>   The Court:   The Court has to sentence you and give two figures when it sentences you on a felony offense in Michigan. There is a minimum sentence and a maximum sentence. So if the Judge sentences somebody here in Michigan on a felony, he doesn't just say you're going to go 15 years to prison or ten years to prison. He gives two numbers. He says you're going to serve a minimum sentence of whatever it might be, five years, and a maximum of 15, or a minimum of ten years and a maximum of 20, and then when a person goes to the prison system, they go to serve the minimum sentence after which they have a possibility of being paroled and then it's up to the parole board to decide within that period of time between the two figures as to whether somebody should be released on parole from prison.

> In this case, the agreement is that the minimum sentence that you would receive would not be more than 14 years. In other words, 14 years to some other figure, and I'll have to pick a figure for the maximum sentence. It can be any number of years up to and including life imprisonment but as a practical matter usually if there's a 14-year minimum, there's going to be a figure on the other end, 25 years, 30 years, whatever it might be, and I'll have the probation department make a recommendation to me about that.
>
> So, when you receive the sentence, it'll be 14 years to some other figure, okay, and when you go to the prison system, the minimum sentence is going to be 14 years and that means –

Petitioner: So I'm going to do all 14 years?

The Court: – That means you have to serve the minimum sentence before you're eligible for parole, that's correct.

> You're not eligible for parole until you serve your minimum sentence. Do you understand that?

Petitioner: That's – that's not the way it was – spoken.

The Court: Well, I don't know. I'm just trying to explain to you what it would be so –

Petitioner: Right. That's not – I – I was just – I just asked Virginia Cairns [Defense Counsel] if I mind my P's and Q's if I can get out of there within a four-year period or some –

The Court: No, you can't. I can tell you the answer to that. You cannot – you cannot be paroled within four years. You're facing a life offense for which you could go to prison for 40 to 60 years. You could go to prison for any number of years up to and including life in prison. You could receive natural life in prison, so with a sentence 14 years to 30 or whatever the case may be, you are not going to be eligible for parole until you've served your minimum sentence and that certainly won't be four years, okay.

\*\*\*

Petitioner: Can I have a second to talk to my Dad?

| | | |
|---|---|---|
| The Court: | | Do you understand all that? Well, that's fine. I don't have any problem with that. |

\*\*\*

| | | |
|---|---|---|
| Petitioner: | | All right. I'm back. |
| The Court: | | Okay. Now, where were we? We were talking about the terms of the plea agreement and you've heard that this will be a plea agreement as has been indicated that you will be guaranteed that your minimum sentence will not be larger than 14 years. Did you hear all that? |
| Petitioner: | | Yeah. |
| The Court: | | Okay. Now, do you understand the terms of the plea agreement? |
| Petitioner: | | Yes. |

(Plea Tr, 16-20.) As demonstrated by the record, the trial court clearly explained to Petitioner that he would not be eligible for parole until he completed his fourteen-year minimum sentence. Petitioner also acknowledged that the charge carried a maximum sentence of any number of years, up to and including life imprisonment. (Plea Tr. 8.) Petitioner told the court that he was not being forced to plead guilty and that his decision was free and voluntary. (Plea Tr, 20-21.) There is no indication from the record that Petitioner was impaired in any way during the plea proceedings. The trial court concluded that Petitioner's plea of guilty was entered knowingly and voluntarily. (Plea Tr, 23.) In light of the presumption of correctness afforded to the finding of the trial court and supporting plea transcript, Petitioner cannot show that his nolo contendere plea was anything other than knowing, voluntary, and intelligent.

Petitioner also has not demonstrated that manifest injustice would result because he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent. *Schlup*, 513 U.S. at 322 (citing *Murray*, 477 U.S. at 495). To establish actual innocence, petitioner must demonstrate that, "in light of all the evidence it is more likely than not

that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327-328 (internal quotations omitted). Petitioner claims that he is innocent of the offense of assault with intent to commit murder because he only fired the gun over the heads of the people in front of the Wilemon residence to scare them. In support of his theory of innocence, Petitioner claims that a neighbor on Logan Street would testify that the shots left marks 14 to 16 feet up the tree. Petitioner also obtained an affidavit from co-defendant Carlos Porter, who stated that Petitioner fired into the air. However, the factual basis offered at the plea hearing clearly indicated that Petitioner fired several shots at Wilemon shortly after threatening to kill him. It is well established that the intent to kill may be inferred from the use of a dangerous weapon. *See People v. Barclay,* 528 N.W.2d 842, 844 (Mich. Ct. App. 1995); *People v. DeLisle*, 509 N.W.2d 885, 893 (Mich. Ct. App. 1993). The fact that Petitioner may have missed his target by several feet while shooting from a moving car does not alter his intent. Accordingly, Petitioner fails to make a colorable claim of actual innocence.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.

Dated:  November 29, 2004              /s/ Hugh W. Brenneman, Jr.
                                       Hugh W. Brenneman, Jr.
                                       United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).